# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**CHARLES L. SMITH,**

        **Plaintiff,**

    **v.**                                 **Case No. 05-C-686**

**FOREMOST FARMS USA;**
**CENTRAL STATES, SOUTHEAST**
**AND SOUTHWEST AREAS PENSION PLAN;**
**and TEAMSTER LOCAL 563,**

        **Defendants.**

---

# DECISION AND ORDER

---

The Plaintiff, Charles L. Smith ("Smith"), filed suit against Foremost Farms USA ("Foremost"), Central States, Southeast and Southwest Areas Pension Plan ("Central States"), and Teamster Local 563 ("Local 563"). Smith's complaint alleges violations of the Employee Retirement Income Security Act ("ERISA"), and also raises federal common law claims of breach of a covenant of good faith and fair dealing, equitable estoppel and promissory estoppel. Central States filed a motion to dismiss and a motion for summary judgment, both of which are now pending before this Court.

## BACKGROUND

After working for Foremost for over twenty-eight years, Smith was terminated when Foremost closed its Appleton, Wisconsin plant. (Defendant's Proposed Findings of Fact ("DPFOF") ¶ 19.) Central States, which is a multi-employer pension trust fund, currently

provides Smith a monthly pension based on his over twenty-eight years of employment. (*Id.* at ¶¶ 1-2.) Smith alleges, though, that he should be receiving a pension for thirty years of credit because he made additional contributions to the Central States Fund.

The Pension Fund Plan Document ("Plan Document") contains the requirements for participation in the Central States Fund and conditions the payment of pension benefits. (*Id.* at ¶ 7.) The Plan Document describes two types of contributions that may be made to the Pension Fund – "Employer Contributions" and "Self-Contributions." (*Id.* at ¶ 8.) Employer Contributions are contributions that an employer is required to make to the pension fund pursuant to the terms of a collective bargaining agreement. (*Id.*) Self-Contributions, on the other hand, are voluntary contributions that an employee may make "when he is on the seniority list of a Contributing Employer." (*Id.*) The Plan Document also states that if an employee is laid off on or after January 1, 2000, he is permitted to make Self-Contributions for a maximum of 2 years after his cessation date. (*Id.* at ¶ 10.) The Trustees of the Central States Fund have discretionary power and authority to administer the trust and decide claims for benefits. (*Id.* at ¶ 3.)

Smith's suit against Central States arises from a series of events surrounding the closing of Foremost's Appleton, Wisconsin plant. Foremost first announced that it intended to close its Appleton, Wisconsin plant on April 24, 2003. (Plaintiff's Proposed Findings of Fact ("PPFOF") ¶ 1.) On May 27, 2003, Smith wrote Central States to request information about his pension, in light of the expected closure of the Appleton plant. (DPFOF ¶ 17.) In his letter, Smith asked whether he could still make self-contributions to the Central States

2

Fund so as to increase the amount of contributory credit that would be used to calculate his pension benefits. (*Id*.) On July 23, 2003, Central States responded with a letter, accompanied by a Special Bulletin. (*Id.*) The letter asserted that, according to the enclosed Special Bulletin, "if a company ceases operations on or after January 2000 you can self contribute for a maximum of two years, provided that you are in the proper status." (*Id.* at ¶ 18.) The letter also stated, "Details given are based on current information and pension plan provisions. Eligibility may change if we find additional or conflicting information." (*Id.*)

On September 25, 2003, Foremost sent Smith a Plant Closing Notice that advised him that the Appleton plant would permanently close on November 28, 2003. The Plant Closing Notice also indicated that Smith would be "permanently laid off on November 28, 2003." (*Id.* at ¶ 19.) Four days before the plant closure, on November 24, 2003, Smith's union, Local 563, signed a Severance Package Agreement ("Severance Agreement") for its employees at the Appleton Plant. (*Id.*) Foremost signed the Severance Agreement on December 2, 2003. (*Id.*) As a result, Smith received severance pay pursuant to the Severance Agreement. (*Id.* at ¶ 29.)

On December 19, 2003, Smith wrote Central States and enclosed the notice he received from Foremost regarding the closing of the Appleton plant. (*Id.* at ¶ 20.) Smith also enclosed a check for $6,888.00, which he said was a self-contribution to the pension fund. (*Id.*) Smith indicated in his letter that he had twenty-eight and a half years of contributory credit, and the additional $6,888.00 would increase his credit to thirty years and qualify him

3

for the "30 and out" pension. (*Id.* at ¶ 20.) He also stated that "[a]t the present time, I am collecting severance pay." (*Id.*)

On March 19, 2004, Central States wrote a letter in response to Smith. (*Id.* at ¶ 25.) Central States told Smith that it had received his payment of $6,888.00, but that it needed additional documentation, including information as to whether Smith "signed a closing agreement upon leaving . . . Foremost Farms." (*Id.*) In response, Smith wrote Central States a letter on March 30, 2004, requesting verification of the amount of his pension when he retired. (*Id.* at ¶ 26.)

On May 4, 2004, Central States wrote Smith another letter, again requesting information as to whether Smith or his local union signed a closing agreement with Foremost upon the closing of the Appleton Plant. (*Id.* at ¶ 27.) Central States wrote, "Once we receive the requested information we will be able to advise you of the benefit amount that you are eligible to receive." (*Id.*) Two weeks later, Smith responded to Central States and wrote, "I don't know how this has anything to do with my pension but please now send me verification of my Pension Benefits." (*Id.* at ¶ 28.)

After receiving Smith's response, Central States began its own inquiry into the matter. It spoke to Foremost's payroll department and learned that Smith's union and Foremost had entered into a Severance Agreement, and that Smith received a severance package pursuant to that Severance Agreement. (*Id.* at ¶ 29.) Central States concluded that because Smith, as a result of the Severance Agreement, no longer was an employee of Foremost on December 2, 2003, Smith could not make self-contributions to the pension fund. On August 4, 2004,

4

Central States notified Smith of its decision, and stated, "we understand that your bargaining unit entered into a closing agreement with Foremost Farms USA which terminated all seniority rights, therefore, you are not in the proper employee status to submit Self-Contributions." (*Id.* at ¶ 32.)

Smith filed an administrative appeal of Central States's decision. (*Id.* at ¶ 35.) On September 30, 2004, the Benefits Claim Appeals Committee considered the appeal and concluded that Smith was not eligible to submit self-contributions after the Severance Agreement was executed. (*Id.* at ¶ 36.)

On February 8, 2005, Smith filed an appeal to the Central States Trustees ("Trustees"). (*Id.* at ¶ 40.) Smith's attorney, Alan Olson ("Olson"), argued that Smith should be allowed to make self-contributions to reach a pension on thirty years of contributory credit. (*Id.*) On April 20, 2005, the Trustees rejected Smith's request. (*Id.* at ¶ 41.) The Trustees explained, in a letter to Olson, that Smith was not eligible to make self-contributions after December 2, 2003, because "under the provisions of the parties' Collective Bargaining Agreement and Severance Package Agreement, Smith's employment and seniority were terminated." (*Id.* at ¶ 42.) Thus, according to the Trustees, Smith was "not in eligible employee status (i.e. layoff) to make Self-Contributions for periods after December 2, 2003." (*Id.*)

5

On June 29, 2005, Smith filed suit in this Court against Foremost, Local 563, and Central States (collectively the "Defendants").[1] Smith alleged seven causes of action. The first cause of action is an ERISA civil enforcement action pursuant to ERISA § 502(a)(1)(B). The second and third claims in his complaint allege that the Defendants breached their fiduciary duties in violation of ERISA § 404(a)(1)(B) and § 404(a)(1)(D). The fourth cause of action alleges that Smith did not receive a full and fair review of his claim and the reasons for the denial of his claim in violation of ERISA § 503(1) and § 503(2). And finally, the fifth, sixth, and seventh claims raise allegations pursuant to federal common law. The fifth claim avers that the Defendants breached a covenant of good faith and fair dealing, while the sixth and seventh claims allege relief under the equitable and promissory estoppel doctrines.

On July 25, 2005, Central States filed a motion to dismiss the second, third, fifth, sixth and seventh claims for relief. Subsequently, on August 22, 2005, Central States filed a motion for summary judgment, seeking dismissal of all the claims.[2]

## STANDARD OF REVIEW

A court will grant a Rule 12(b)(6) motion to dismiss only if the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint need not plead facts or law. *See Doe v. Smith*, 429 F.3d 706, 707 (7th Cir. 2005). Rather, a complaint

---

[1] Smith also filed suit against the International Brotherhood of Teamsters, AFL-CIO (the "Teamsters"). However, because Smith never effected proper service of process on the Teamsters, the Teamsters were dismissed from this suit. *See Smith v. Foremost Farms USA*, 05-CV-686 (E.D. Wis. Dec. 9, 2005).

[2] Foremost and Local 563 also later filed motions for summary judgment. This opinion does not address those motions.

6

suffices under Rule 12(b)(6) if any facts consistent with its allegations could be established by affidavit or testimony at trial. *Id.*

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which he bears the burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to

7

establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

## DISCUSSION

I.   **<u>Smith's Breach of Fiduciary Duty Claims</u>**

Smith alleges in his second and third claims for relief that Central States breached its fiduciary duties, which arise under ERISA § 502(a)(3). *See Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 451 (3d Cir. 2000). ERISA § 502(a)(3) is a "catchall" provision, which "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity v. Howe*, 516 U.S. 489, 512 (1996).

While the Seventh Circuit has not yet addressed the issue, an overwhelming majority of federal circuits construe the Supreme Court's holding in *Varity* as precluding plaintiffs from proceeding under ERISA § 502(a)(3) if the plaintiffs can proceed under ERISA § 502(a)(1)(B). *See Katz v. Comprehensive Plan of Grp. Ins.*, 197 F.3d 1084, 1088-89 (11th Cir. 1999); *Rhorer v. Raytheon Engineers & Constructors*, 181 F.3d 634, 639 (5th Cir. 1999); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474-75 (9th Cir. 1997); *Wald v. Southwestern Bell Corp. Customcare Med. Plan*, 83 F.3d 1002, 1006 (8th Cir. 1996). Only the Second Circuit has held otherwise. *See Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001).

This Court agrees with the holdings of the majority of federal circuits. The Supreme Court in *Varity* observed that ERISA § 502(a)(3) only authorizes "appropriate" equitable

8

relief, and "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Varity*, 516 U.S. at 515. Because Smith can bring a claim for benefits under ERISA § 502(a)(1)(B), as he did in the first claim of his complaint, equitable relief would not be appropriate here. *See Wald*, 83 F.3d at 1006. Therefore, the Court grants Central State's motion for summary judgment dismissing his second and third claims for relief.[3]

## II.    Smith's Civil Enforcement Action Pursuant to ERISA § 502(a)(1)(B)

Smith alleges in the first claim of his complaint that he is entitled to increased pension benefits, pursuant to ERISA § 502(a)(1)(B). Section 502(a)(1)(B) of ERISA allows a participant of an ERISA plan to "recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

The parties do not dispute that the Trustees of the Central States Plan had discretionary authority to administer the Plan and decide benefit claims. (DPFOF ¶ 3.) Accordingly, this Court reviews the Trustees' decision under the arbitrary and capricious standard. *See Russo v. Health, Welfare & Pension Fund, Local 705 Int'l Brotherhood of Teamsters*, 984 F.2d 762, 765 (7th Cir. 1993). That is, "as long as the Trustees' decision was based on a reasonable interpretation of the plan's language and the evidence in the case," this

---

[3] It is inappropriate to make such an adjudication at the motion to dismiss stage, so the Court denies Central States's motion to dismiss as to Counts Two and Three. *See Black v. Long Term Disability Ins.*, 373 F. Supp.2d 897, 901-03 (E.D. Wis. 2005).

9

Court cannot disturb the Trustees' decision. *Id.* Furthermore, a review of a decision denying benefits is based solely on a review of the administrative record. *See Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004). Discovery is limited to the administrative record, and no additional discovery is permitted. *Id.*

Smith's claim for additional pension benefits is premised on the assumption that the $6,888.00 payment he made to Central States on December 19, 2004, should have been accepted by Central States as a self-contribution that would increase his contributory credit to thirty years of service. In order to be eligible to make a self-contribution, the Plan Document requires that one must be on the "seniority list of a Contributing Employer" and be an employee either on "sick-leave," "layoff status," or on an "approved strike." (DPFOF ¶ 8.) The Trustees concluded that he was no longer on the "seniority list" because he received a severance pay from Foremost pursuant to the Severance Agreement executed on December 2, 2003. The effect of receiving severance pay was explicitly addressed in the 2001-2006 Collective Bargaining Agreement ("CBA") between Foremost and Local 563, in which it states that "[a]n employee's length of service is nullified if . . . the employee accepts severance benefits from the Employer." (Nelson Aff. ¶ 9, Ex. C, p. 57.) Given the plain language of the CBA, combined with Smith's acceptance of severance pay, the Trustees concluded that he was no longer on the seniority list, or even an employee on "laid-off status." Thus, the Trustees concluded that Smith was precluded from making a self-contribution on December 19, 2003.

Smith argues, though, that he received a memo from Foremost on May 23, 2003, which he interprets to mean that he was on the seniority list even after he received a severance package. The memo stated that if an employee was offered a position in another location after his plant closed, the employee would be permitted to transfer to the new position and receive severance benefits. (Nelson Aff. ¶ 9, Ex. C, p. 28.)

Smith's argument is without merit and certainly cannot overcome the high degree of deference this Court must afford the Trustees' decision. The May 23, 2003 memo does not mean that Smith was on the seniority list even after he received a severance package. Rather, the memo only referred to the status of those who were *transferred* to another location. Those who were transferred after their plant was closed regained their employment status and returned to the seniority list, negating the effect of their severance pay. Smith, though, never was transferred, so the memo does not even apply to his situation.

Furthermore, Smith avers that he did not knowingly waive his right to make self-contributions when he accepted the severance package. If he would have known he was waiving his right to make self-contributions by accepting severance pay, he claims that he never would have accepted the severance pay in the first place. He would have opted, instead, to make the self-contributions that would have afforded him more lucrative pension benefits.

Smith's waiver argument must fail.[4]  This Court must defer to the judgment of the Trustees, and only inquire as to whether the Trustees' determination was "downright unreasonable" based on the information that was presented to the Trustees.  *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir. 1999) (internal quotation omitted), *cert. denied*, 529 U.S. 1068 (2000).  There is no indication in the administrative record that the Trustees were presented evidence that Smith had reason to be ignorant of the effect his severance pay had on his ability to make self-contribution payments.  Rather, the Trustees had a copy of the CBA, which plainly stated that when an employee received severance pay, "the employee's length of service is nullified."  (Nelson Aff. ¶ 9, Ex. C, p. 57.)  Smith's rights as an employee with Foremost were dictated by the CBA, and whether Smith understood or read the CBA was a question not presented to the Trustees.

This Court cannot substitute its judgment for that of the Trustees.  *See Carr*, 195 F.3d at 294.  Rather, the only question is whether the Trustees' decision was "downright unreasonable."  *Id.*  Given that the CBA plainly states that severance pay would nullify an employee's length of service, and given that an employee must be on the seniority list to make self-contributions, the Trustees were reasonable in its conclusion that Smith could not make self-contributions after he received his severance pay.  Accordingly, Smith's ERISA § 502(a)(1)(B) claim against the Trustees must be dismissed.

---

[4] The Court's determination does not affect any claim Smith may have against Foremost or Local 563.

Case 2:05-cv-00686-RTR   Filed 05/12/06   Page 12 of 15   Document 72

### III.  Smith's ERISA § 503 Claim

Smith's fourth claim for relief alleges that Central States was arbitrary and capricious by failing to provide him a full and fair review of the decision denying his claim.  ERISA § 503 requires that specific reasons for denial be communicated to the claimant and that the claimant be given a "full and fair review" by the administrator.  29 U.S.C. § 1133.  Central States complied with these requirements.  On April 28, 2005, Central States provided Smith's attorney a determination letter, which explained the reasons for the Trustees' denial of Smith's claim.  The letter cited the relevant provisions of the CBA and the Severance Agreement, and explained the reasons why those provisions precluded Smith from making self-contributions after December 2, 2003.  Furthermore, the administrative record evinces that the Trustees considered all of the relevant evidence when making its determination.  Accordingly, the Court grants Central States's motion for summary judgment as to Smith's fourth claim for relief.

### IV.  Breach of Good Faith and Fair Dealing Claim

Generally, state common law causes of action are preempted by ERISA.  29 U.S.C. § 1144(a).  Nevertheless, the Supreme Court has directed federal courts to "develop a federal common law of rights and obligations under ERISA-regulated plans" to effectuate the purpose of ERISA.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) (citation omitted).  Here, Smith urges this Court to exercise its authority to develop federal common law under ERISA by recognizing a federal breach of good faith and fair dealing cause of action.  The Court declines to do so.  The Seventh Circuit has not recognized such

13

a federal common law right in the ERISA context, and for good reason. The duty of good faith and fair dealing essentially is included in the fiduciary duties owed to participants and beneficiaries of ERISA plans. *See* 29 U.S.C. § 1104(a)(1). There is no reason why the Court ought to carve out a new cause of action under federal common law when a similar cause of action already exists under ERISA. Accordingly, Smith's fifth claim for relief is dismissed.

## V.   **Equitable and Promissory Estoppel Claims**

In his sixth and seventh claims for relief, Smith raises federal common law causes of action for promissory and equitable estoppel. The Seventh Circuit recognized a federal cause of action for promissory estoppel in the ERISA context, *see Miller v. Taylor Insulation Co.*, 39 F.3d 755, 758 (7th Cir. 1994), and later, when applying this cause of action, the Seventh Circuit has not distinguished between promissory and equitable estoppel in ERISA cases. *See Downs v. World Color Press*, 214 F.3d 802, 805 (7th Cir. 2000). The Court will consider, therefore, Smith's sixth and seventh claims for promissory and equitable estoppel as one claim for estoppel.

The Seventh Circuit has recognized the doctrine of estoppel so as to prevent a party from benefitting from its own misrepresentations. *See Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir. 1990). Thus, the Seventh Circuit has limited its application of estoppel in the ERISA context to unfunded welfare benefit plans. *Id.* That is, the Seventh Circuit has expressed reluctance to apply estoppel to a multi-employer plan because that would require "all the employers [to] pay for one employer's misrepresentations." *Id.* While the Seventh Circuit has not had the opportunity to hold conclusively that estoppel does not

14

apply to multi-employer plans, this Court follows the dictum of *Black* that indicates the

Seventh Circuit's reluctance to do so. *Id.* Thus, because Central States is a multi-employer

plan, the Court dismisses Smith's sixth and seventh claims for relief as applied to Central

States.[5]

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY**

**ORDERED THAT**:

Central States's Motion to Dismiss (Docket No. 7) is **DENIED** in part, and

**GRANTED** in part. It is granted to dismiss Count Five of Smith's Complaint only.

Central States's Motion for Summary Judgment (Docket No. 25) is **GRANTED**.

Central State's Motion for Leave to File Supplemental Authority (Docket No. 34) is

**DENIED**, as moot.

Dated at Milwaukee, Wisconsin, this 12th day of May, 2006.

BY THE COURT:

s/Rudolph T. Randa
HON. RUDOLPH T. RANDA
Chief Judge

---

[5] The Court, again, offers no opinion at this time as to whether the claims are actionable against Foremost and Local 563.

15